Kerry S. Culpepper (admitted *pro hac vice*)
Joshua J. Lee (admitted *pro hac vice*)
**CULPEPPER IP, LLLC**
75-170 Hualalai Rd., STE B204
Kailua-Kona, HI 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
Emails: kculpepper@culpepperip.com
        joshua.lee@culpepperip.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FRONTIER COMMUNICATIONS CORPORATION, *et al.*[1] | Case No. 20-22476 (RDD) |
| | (Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF MOVIE CLAIMANTS' MOTION TO WITHDRAW REFERENCE**

---

[1] Due to the large number of debtor entities in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Reorganized Debtors' claims and noticing agent at https://cases.primeclerk.com/ftr. The location of the Reorganized Debtors' service address for purposes of these chapter 11 cases is: 50 Main Street, Suite 1000, White Plains, New York 10606.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………… 4

I.   INTRODUCTION…………………………………………………………………….. 5

II.  BRIEF RELEVANT PROCEDURAL HISTORY……………………………………. 6

III. ARGUMENT………………………………………………………………………….. 8

    A.   Withdrawal of the reference is mandatory…………………………………….. 9

    B.   Alternatively, permissive withdrawal is appropriate……………………………. 11

    C.   The reference must be withdrawn to preserve the movie claimants' right to a jury trial……………………………………………………………………………… 11

    D.   The Motion is Timely………………………………………………………………12

    E.   Any alleged prior consent to participate in the claim resolution process is irrelevant…………………………………………………………………………... 13

IV.  CONCLUSION……………………………………………………………………. 14

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998)………………………. 12

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990)…………………………………. 9

*Lone Star Indus. v. Rankin County Econ. Dev. Dist.* (*In re New York Trap Rock Corp.*), 158 B.R. 574, 577 (S.D.N.Y. 1993))……………………………………………………………………… 12

*Messer v. Bentley Manhattan Inc.* (*In re Madison Bentley Assocs.*), 474 B.R. 430, 436–37 (S.D.N.Y. 2012)…………………………………………………………………………......... 12

*Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993)………………………………………………………………………………….. 11

*Picard v. Flinn Invs., LLC*, 463 B.R. 280, 283 (S.D.N.Y. 2011)…………………………….... 9

*UMG Recordings, Inc. v. Frontier Communications Corporation*, Case No. 1:21-cv-05050…... 7

*VWE Grp., Inc. v. Amlicke* (*In re VWE Grp., Inc.*), 359 B.R. 441, 446 (S.D.N.Y. 2007)……… 12

**Statutes**

17 U.S.C. § 101 …………………………………………………………………………………. 5, 9

17 U.S.C. § 502 ………………………………………………………………………………….. 9

17 U.S.C. § 504 ………………………………………………………………………………….. 12

17 U.S.C. § 512………………………………………………………………………………….. 6, 9

17 U.S.C. § 1202…………………………………………………………………………………... 5, 9

17 U.S.C. § 1203………………………………………………………………………………......... 9

28 U.S.C. § 157(d) …………………………………………………………………………….. 4, 9, 12

47 U.S.C. § 551…………………………………………………………………………………... 10

Fed. R. Bankr. P. 5011(a)……………………………………………………………………….... 4

**Other Authorities**

USTR, 2014 Out-of-Cycle Review of Notorious Markets, Mar. 5, 2015, pg. 17, Available at https://ustr.gov/sites/default/files/2014%20Notorious%20Markets%20List%20-%20Published_0.pdf [last accessed on May 7, 2021] ...………………………………………………………… 9, 10

USTR, 2018 Out-of-Cycle Review of Notorious Markets, April 2019, pgs. 24, 27-28 Available at https://ustr.gov/sites/default/files/2018_Notorious_Markets_List.pdf [last accessed on June 25, 2021] ………...…………………………………………………………………………………. 9, 10

Claimants Voltage Holdings, LLC; Backmask, LLC; Union Patriot Capital Management, LLC; Venice PI, LLC; Bedeviled, LLC; MON, LLC; Colossal Movie Productions, LLC; TBV Productions, LLC; Definition Delaware LLC; I Am Wrath Productions, Inc.; Hannibal Classics Inc.; Justice Everywhere Productions LLC; Badhouse Studios, LLC; After Productions, LLC; Rise Up, LLC; Status Update LLC; Morgan Creek Productions, Inc.; Shock and Awe, LLC; Fun Mom Dinner, LLC; Dead Trigger Movie, LLC; YAR Productions, Inc.; Gunfighter Productions, LLC; Ace in the Hole Productions, LP; SF Film, LLC; The Rest of Us, Inc.; Killing Link Distribution, LLC; Cell Film Holdings, LLC; Dallas Buyers Club, LLC; Screen Media Ventures, LLC; Rambo V Productions, Inc.; Millennium Funding, Inc.; Millennium IP, Inc.; LHF Productions, Inc.; UN4 Productions, Inc.; Millennium Media, Inc.; Bodyguard Productions, Inc.; Hunter Killer Productions, Inc.; Fallen Productions, Inc.; HB Productions, Inc.; Laundry Productions, Inc.; Black Butterfly Film, LLC; AMBI Distribution Corp.; Dubious Productions, Inc.; Rupture CAL, Inc.; Future World One, LLC; Groove Tails Productions, LLC; Family of the Year Productions, LLC; Eve Nevada, LLC; After II Movie, LLC;  Wonder One, LLC;  and American Cinema International, Inc., ("movie claimants") by and through their counsel, submit this Memorandum of Law in support of their motion pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a) to withdraw the reference with respect to the movie claimants' pre-petition and post-petition copyright infringement claims against Frontier Communications Corporation ("Frontier," together with its debtor affiliates, the "Debtors" or the "Reorganized Debtors").

The movie claimants previously filed a statement of joinder [Doc. #1915] in support of other copyright claimants' ("music claimants") Motion to Withdraw the Reference [Doc. #1898] ("music claimants' motion").  In the status conference of June 15, 2021 before the Bankruptcy

4

Court, counsel for the movie claimants reiterated their support for the music claimants' motion and stated their agreement to file their claims in the District Court if the music claimants' motion was granted for judicial economy. Judge Drain instructed Frontier and the movie claimants ("Parties") to decide on a "mechanism" to put this into effect. To this end, counsel for movie claimants proposed to Frontier via email on June 24, 2021 that Frontier and they enter into a stipulation by which the movie claimants would agree to abide by the ruling on the music claimants' motion and file their claims in the District Court if the motion was granted to avoid another round of briefing on this issue. *See* Exhibit "1". Frontier flatly rejected this proposal even though it merely incorporates what Judge Drain instructed the Parties to do and would avoid further briefing on the same issue and necessitating the Court to rule again on this issue. Id. Accordingly, the movie claimants file the present motion.

## I.      INTRODUCTION

The movie claimants filed pre-petition and post-petition claims based upon *inter alia* secondary liability for Frontier's subscribers' direct infringements of the copyrights in their motion pictures per 17 U.S.C. § 101 and violations of the integrity of the copyright management information ("CMI") conveyed with their motion pictures per 17 U.S.C. §§1202(a)(2), (b)(2), (3). A summary of the claim numbers and claims is shown in Exhibit 1 [Doc. #1894-1] to the movie claimants' Response [Doc. #1894] to Frontier's objection.

The movie claimants are producers of popular motion pictures currently available for sale online and in brick and mortar retail stores. Many of these critically acclaimed motion pictures were released in theaters throughout the world and feature A-list actors such as Matthew McConaughey, Samuel Jackson, Ryan Reynolds, Sylvester Stallone, Nicholas Cage, Morgan Freeman and Angela Basset, among others.

The movie claimants invested significant financial resources, time and effort in making and marketing these motion pictures based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales. Massive piracy of these motion pictures by subscribers of Frontier and the willful failure of Frontier to deal with this issue despite clear notice of it have hindered this opportunity.

The movie claimants and/or their affiliates and other rightsholders engaged Maverickeye UG (haftungsbeschränkt) ("MEU") to monitor peer-to-peer/BitTorrent networks for acts of distribution of their motion pictures ("Works") and generate Notices of infringements ("Notices") styled per §512(c)(3) notification of the Digital Millennium Copyright Act ("DMCA") to be sent to Internet Service Providers ("ISPs") of Internet Protocol ("IP") addresses where MEU confirmed infringement of copyright protected content.

The movie claimants' agents sent over 191,300 Notices to Frontier concerning over 89,900 IP addresses associated with confirmed infringing activity as of March of 2020.  Since Frontier's bankruptcy, the movie claimants' agent has sent an additional 25,000 Notices, some of which concern the same IP addresses for which Notices were sent prior to the bankruptcy.

## II.     BRIEF RELEVANT PROCEDURAL HISTORY

On April 14, 2020 (the "Petition Date"), Frontier filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the United States District of the Southern District of New York (the "Bankruptcy Court").

Between July 15 and August 17, 2020, the movie claimants filed 30 proofs of claims based upon pre-petition allegations.  *See* Exhibit 1 [Doc. #1894-1] to the movie claimants' Response [Doc. #1894] to Frontier's objection.

On August 27, 2020, the Bankruptcy Court confirmed Frontier's Chapter 11 plan of reorganization (the "Plan") and entered Findings of Fact, Conclusions of Law, and Order Confirming the Fifth Amended Joint Plan of Reorganization of Frontier Communications Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Doc. # 1005].

Between August 28, 2020 and September 28, 2020, the movie claimants filed 20 proofs of claims based upon pre-petition allegations.  *See* Exhibit 1 [Doc. #1894-1] to the movie claimants' Response.

On April 30, 2021, Frontier filed a Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates (the "Effective Date Notice") [Doc. # 1793], which provided notice of the effective date of the Plan, which occurred on April 30, 2021 (the "Effective Date"), and the June 1, 2021 bar date for administrative proofs of claim.

On May 17, 2021, Frontier filed the Omnibus Objection to Certain Disputed Copyright Claims [Doc. #1818] ("Objection").  On May 25, 2021, Frontier filed a revised order [Doc. #1842] that included reference to the movie claimants.

Between May 28, 2021 and June 1, 2021, the movie claimants filed 8 proofs of claims based upon post-petition allegations.  *See* Exhibit 1 [Doc. #1894-1] to the movie claimants' Response.

On June 7, 2021, the movie claimants filed their Response [Doc. #1894] to the Objection.

On June 8, 2021, the music claimants commenced an action (the "District Court Action") against Frontier under the caption *UMG Recordings, Inc. v. Frontier Communications Corporation*, Case No. 1:21-cv-05050 based upon *inter alia* copyright infringement.

On June 9, 2021, the music claimants filed their motion to withdraw the reference [Doc. #1898].

On June 14, 2021, the movie claimants filed their statement of joinder [Doc. #1915] in support of the music claimants' motion.

### III.    ARGUMENT

The movie claimants incorporate by reference in the present motion the arguments made by the music claimants in their motion to withdraw the reference [Doc. #1898].

Each of the movie claimants' pre-petition and post-petition claims included a reservation or rights stating that the proof of claim "shall not be deemed a consent … to having any matters relating to any disputed claims heard by the Bankruptcy Court; nor shall submission of this Proof of Administrative Claim waive any right … or to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or any other rights… all of which rights … are expressly reserved." Pg. 1 of attachment to Claim #2659 of Screen Media Ventures (screenshot below).

infringement. Further, this proof of claim shall not be deemed a consent by SMV to having any matters relating to any disputed claims heard by the Bankruptcy Court; nor shall submission of this Proof of Claim waive any right of SMV to have final orders in non-core matters entered only after *de novo* review by a district judge, or to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or any other rights, claims, actions, defenses, setoffs or recoupments (whether contingent, unliquidated or otherwise) to which SMV is or may be entitled under any agreements, in law or equity, all of which rights, claims,

A.     Withdrawal of the reference is mandatory.

Withdrawal of the reference with respect to adjudication of the movie claimants' claims is mandatory under 28 U.S.C. § 157(d) because the claims arise under, and present complex issues of, federal non-bankruptcy law, namely the Copyright Act generally and the DMCA in particular. In the Second Circuit, withdrawal of the reference is mandatory "for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *Picard v. Flinn Invs., LLC*, 463 B.R. 280, 283 (S.D.N.Y. 2011) (quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990)).

Here, to adjudicate the copyright claims, the Bankruptcy Court would be required to substantially and materially consider claims and issues arising under not just 17 U.S.C. §101 concerning secondary liability for copyright infringement, but also under 17 U.S.C. §1202 concerning the integrity of CMI in file titles of illicit digital copies of the movie claimants' motion pictures pirated by Frontier subscribers, and the availability of injunctive relief provided in 17 U.S.C. §§502(a), 512(j) and 1203(b)(1) to order Frontier to block its subscribers from accessing notorious movie piracy websites originating outside of the United States and to terminate the accounts of certain Frontier subscribers that continue to pirate the movie claimants' motion pictures. As stated in pgs. 9-10 of the Response [Doc. #1894], some of Frontier's subscribers have registered for accounts with notorious piracy websites such as YTS and RARBG that the United States Trade Representative ("USTR") has listed as examples of Notorious Markets engaged in and facilitating substantial piracy. *See* USTR, 2014 Out-of-Cycle Review of Notorious Markets, Mar. 5, 2015, pg. 17, Available at https://ustr.gov/sites/default/files/2014%20Notorious%20Markets%20List%20-%20Published_0.pdf [last accessed on May 7, 2021]; USTR, *2018 Out-of-Cycle Review of Notorious Markets*, April

2019, pgs. 24, 27-28 Available at https://ustr.gov/sites/default/files/2018_Notorious_Markets_List.pdf [last accessed on June 25, 2021].

Moreover, Frontier's assertion in its objection that (1) the movie claimants cannot prove direct and actual copyright infringement by Frontier subscribers, and (2) Frontier is protected from liability by a safe harbor provision in the DMCA (*see* Objection [Doc. #1818] at pgs. 6-7), will necessitate that the movie claimants serve a subpoena on Frontier for the identities of a percentage of the more than 89,000 subscribers that pirated their motion pictures in order to prove the direct infringements and that Frontier's so-called repeat infringer policy was a sham and conduct third party discovery of these subscribers. However, the Cable Act (47 USC §551(c)(2)(C)) requires a cable provider such as Frontier to provide "…the subscriber the opportunity to prohibit or limit such disclosure." Accordingly, the Court will likely have to interpret the applicability of this provision when hundreds (or even thousands) of these more than 89,000 Frontier subscribers move to quash the subpoena.

Moreover, Frontier's subscribers that pirated the movie claimants' motion pictures are directly liable for copyright infringement. The movie claimants will likely assert claims against the more prolific ones of these subscribers that pirated the motion pictures. Both the movie claimants and these subscribers will have a right to trial by jury for the direct infringement claims.

Given the novel copyright issues and the potential impact on copyright owners and Frontier's subscribers, the District Court is uniquely suited to address the Copyright Claims. Because of the significant interpretation of non-bankruptcy issues that is necessary to adjudicate the Copyright Claims, including issues of first impression within the Second Circuit, mandatory withdrawal of the reference should be granted.

B. <u>Alternatively, permissive withdrawal is appropriate.</u>

In *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993), the Second Circuit identified several factors ("*Orion* Factors") relevant to determination of a permissive withdrawal motion. As discussed below, the *Orion* Factors favor withdrawal.

(1) As discussed above, adjudication of the federal copyright claims will require complex litigation of novel or disputed issues of federal copyright law. Further, as argued by the music claimants, a copyright infringement case will likely take between nine months to two years due to the necessity to conduct extensive fact and expert discovery concerning Frontier's so called repeat infringer policy and how Frontier profited from piracy including but not limited to Frontier's own studies or analyses concerning repeat infringement by its subscribers, the use of piracy protocols (such as BitTorrent) on its platform, and the suspension or termination of Internet service for copyright infringement. *See* Music Claimants' Mot. to Withdraw the Reference [Doc. #1898] at pgs. 18-19.

(2) Allowing separate actions in the Bankruptcy Court and the District Court to proceed will waste judicial resources and could result in inconsistent judgments.

(3) There will be no effect on the uniform administration of bankruptcy law because Frontier's bankruptcy case is essentially over since the Plan was confirmed in August 2020, and went effective on April 30, 2021.

(4) The movie claimants are not forum shopping – rather the movie claimants are merely wishing to pursue relief in the District Court in the same District rather than in the bankruptcy court.

C. <u>The reference must be withdrawn to preserve the movie claimants' right to a jury trial.</u>

It is well established that there is a right to jury trials for claims under federal copyright law. *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 355 (1998) ("[T]he Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself."). As stated above, the movie claimants reserved their rights in their proofs of claim. Moreover, in the Response to Frontier's objection the movie claimants expressly stated, "The movie claimants reserve the right to request that the Court conduct a jury trial to decide the amount of damages…". Response [Doc. #1894] at pg. 18.

The Copyright Claimants are unquestionably entitled to a jury trial on their post-petition claims, and the other factors weigh heavily in favor of permissive withdrawal of the reference.

D.     The motion is timely.

"There is no specific time limit for applications under 28 U.S.C. § 157(d) to withdraw a reference to the bankruptcy court ..." *VWE Grp., Inc. v. Amlicke (In re VWE Grp., Inc.)*, 359 B.R. 441, 446 (S.D.N.Y. 2007) (quoting *Lone Star Indus. v. Rankin County Econ. Dev. Dist. (In re New York Trap Rock Corp.)*, 158 B.R. 574, 577 (S.D.N.Y. 1993)). In the Second Circuit, courts have defined "timely" to mean "as soon as possible after the moving party has notice of the grounds for withdrawing the reference." *Messer v. Bentley Manhattan Inc. (In re Madison Bentley Assocs.)*, 474 B.R. 430, 436–37 (S.D.N.Y. 2012).

The motion is unquestionably timely. It is being filed within 40 days of Frontier's May 25, 2021 revised Omnibus Objection that included the revised order [Doc. #1842] referring to the movie claimants. The motion is filed promptly after the movie claimants received Frontier's wholly inadequate response to informal discovery. The movie claimants provided Frontier with detailed information supporting their claims on January 18, 2021. The movie claimants received

no response from Frontier despite monthly follow up emails until May 14, 2021, when Frontier's counsel suddenly requested permission to seek bankruptcy adjudication. Decl. of Kerry S. Culpepper [Doc. #1894-4] at ¶¶4-5. Frontier finally provided the movie claimants with unusable data (a database in which all identities are randomized, and the relevant data is removed) on May 20, 2021, after they had already filed their objection. Id. at ¶6. This motion is filed less than 30 days after the music claimants filed their District Court action on June 8, 2021. Indeed, the movie claimants promptly filed their statement of joinder [Doc. #1915] indicating their support for the music claimants' Motion. Accordingly, Frontier was plainly on notice of the movie claimants' position with respect to the reference.

While Frontier has not objected to the post-petition claims, they undoubtedly will do so by the July 31, 2021 objection deadline. The Bankruptcy Court has neither heard nor ruled on the claims. Accordingly, no judicial resources have been expended on the claims' proceedings to date.

The music claimants also just commenced the District Court Action—a little more than a month after the Effective Date of the Plan—seeking damages and injunctive relief directed at the same conduct, claims, and defenses that underlie the Copyright Claims. Given the nascent stage of all of the relevant proceedings, there is no prejudice to withdrawing the reference to the District Court at this time. Based on the foregoing, this motion is timely.

E.      <u>Any alleged prior consent to participate in the claim resolution process is irrelevant</u>

In rejecting the movie claimants' offer to stipulate to be bound by the ruling of the music claimants' motion to preserve valuable judicial resources, Frontier's counsel asserted that the movie claimants "…affirmatively consented before the Bankruptcy court…". Exhibit "1". However, any alleged consent was before Frontier's objection to the claims, before Frontier's

wholly inadequate response to informal discovery and before the music claimants filed the District Court action.

### IV. CONCLUSION

Based on the foregoing, the Court should enter an order withdrawing the reference and granting such other and further relief as it deems just and proper.

Dated: Kailua-Kona, HI June 28, 2021

*/s/ Kerry S. Culpepper*
Kerry S. Culpepper (admitted *pro hac vice*)
Joshua Lee (admitted *pro hac vice*)
**CULPEPPER IP, LLLC**
75-170 Hualalai Rd., STE B204
Kailua-Kona, HI 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
Emails: kculpepper@culpepperip.com
joshua.lee@culpepperip.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all ECF recipients in the above-captioned matter.

Dated: Kailua-Kona, HI June 28, 2021

*/s/ Kerry S. Culpepper*
Kerry S. Culpepper (admitted *pro hac vice*)
Joshua Lee (admitted *pro hac vice*)
**CULPEPPER IP, LLLC**
75-170 Hualalai Rd., STE B204
Kailua-Kona, HI 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
Emails: kculpepper@culpepperip.com
joshua.lee@culpepperip.com
