**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Voltage Holdings, LLC, *et al.* ) | Civ. Case No. 1:21-cv-05708-AT |
| ) | *Related cases*:  7:21-cv-05050-AT |
| ) | and 7:21-cv-05253-AT |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| FRONTIER COMMUNICATIONS ) | |
| PARENT, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**FRONTIER COMMUNICATIONS PARENT, INC.'S**
**OPPOSITION TO MOTION TO WITHDRAW REFERENCE**
**OF A PROCEEDING TO THE DISTRICT COURT UNDER 28 U.S.C. § 157(d)**

i

**Table of Contents**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 2

ARGUMENT .............................................................................................................................. 6

I.      THE OBJECTION TO THE MOVIE COMPANIES' CLAIMS FALLS
        SQUARELY WITHIN THE BANKRUPTCY COURT'S AUTHORITY AND
        JURISDICTION. ................................................................................................................ 6

        A.      Adjudicating the Movie Companies' Claims is Core to the Chapter 11
                Cases. ..................................................................................................................... 6

        B.      The Movie Companies Submitted to the Bankruptcy Court's Core
                Jurisdiction by Filing their Claims and Proposing an Adjudication
                Schedule. ................................................................................................................ 8

II.     THE MOVIE COMPANIES CANNOT MEET THE HIGH BAR REQUIRED
        FOR MANDATORY WITHDRAWAL. ........................................................................... 10

        A.      The Movie Companies Must Show that Adjudication of their Claims
                Requires "Substantial and Material" Consideration of Non-Bankruptcy
                Law. ...................................................................................................................... 10

        B.      Adjudicating the Movie Companies' Claims Does not Require
                Substantial and Material Consideration of Non-Bankruptcy Law. ................ 12

        C.      A Now Claimed Jury Trial Right Does Not Mandate Withdrawal. ................. 18

III.    THE MOVIE COMPANIES CANNOT OVERCOME THE STRONG
        PRESUMPTION AGAINST PERMISSIVE WITHDRAWAL. .............................. 21

        A.      Adjudicating the Movie Companies' Claims is Core to the Chapter 11
                Cases. ................................................................................................................... 21

        B.      Considerations of Efficiency and Judicial Economy Militate in Favor of
                Adjudicating the Movie Companies' Claims in the Bankruptcy Court. ....... 22

        C.      The Timing of the Motion Indicates Forum Shopping. ................................. 26

        D.      Other Factors Weigh in Favor of Denying the Motion. ................................ 27

IV.     THE MOVIE COMPANIES' MOTION IS UNTIMELY. ........................................... 27

CONCLUSION ........................................................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abondolo v. GGR Holbrook Medford, Inc.*,
    285 B.R. 101 (E.D.N.Y. 2002) ...................................................................................7, 22

*In re Adelphia Commc'ns Corp.*,
    307 B.R. 404 (Bankr. S.D.N.Y. 2004) .........................................................................8, 15, 19

*In re Adler, Coleman Clearing Corp.*,
    270 B.R. 562 (S.D.N.Y. 2001)....................................................................................12, 16, 20

*In re Ames Dep't Stores, Inc.*,
    512 B.R. 736 (S.D.N.Y. 2014)....................................................................................11

*In re Amfesco Industries, Inc.*,
    1988 U.S. Dist. LEXIS 13227 (Bankr. E.D.N.Y. Nov. 14, 1988) ....................................12, 15

*BWP Media USA Inc. v. Polyvore, Inc.*,
    922 F.3d 42 (2d Cir. 2019)...........................................................................................14

*In re CBI Holding Co., Inc.*,
    529 F.3d 432 (2d Cir. 2008)..........................................................................................19

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995).......................................................................................................10

*Chevrestt v. Am. Media, Inc.*,
    204 F. Supp. 3d 629 (S.D.N.Y. 2016)..........................................................................17

*In re China Fishery Grp. Ltd. (Cayman)*,
    2017 Bankr. LEXIS 2017 (Bankr. S.D.N.Y. July 19, 2017) ....................................9

*Cipollone v. Va. True Corp.*,
    2021 WL 2109205 (E.D.N.Y. May 25, 2021) ...........................................................20

*City of New York v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991)......................................................................................11, 14

*In re Connie's Trading Corp.*,
    2014 WL 1813751 (S.D.N.Y. May 8, 2014) ...........................................................12

*In re Copperfield Invs., LLC*,
    2008 WL 4449413 (E.D.N.Y. Sept. 29, 2008) .........................................................19

*In re Dana Corp.*,
   2007 WL 2908221 (Bankr. S.D.N.Y. Oct. 3, 2007) ...........................................14

*Davis v. Mahlmann*,
   1993 U.S. Dist. LEXIS 98 (N.D. Ill. Jan. 7, 1993) .................................................28

*In re Ditech Holding Corp.*,
   2020 WL 3967897 (Bankr. S.D.N.Y. July 11, 2020) ............................................15

*In re Enron Corp.*,
   388 B.R. 131 (S.D.N.Y. 2008)..............................................................................16

*In re Enron Power Mktg., Inc.*,
   2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) ........................................................14, 16

*Fischer v. Forrest*,
   968 F.3d 216 (2d Cir. 2020).....................................................................................17

*In re FKF 3, LLC*,
   2016 U.S. Dist. LEXIS 117258 (S.D.N.Y. Aug. 30, 2016)....................................20

*In re Frontier Communications Corporation*,
   No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 15, 2021).................................1, 5, 7

*In re Genon Energy, Inc.*,
   No. 17-33695 (DRJ) (Bankr. S.D.T.X. Apr. 25, 2018) ..........................................24

*Gisinger v. Patriach*,
   2016 WL 6083981 (S.D.N.Y. Oct. 18, 2016) ........................................................11

*In re Global Aviation Holdings Inc.*,
   496 B.R. 284 (E.D.N.Y. 2013) ...............................................................................15

*Granfinanciera v. Nordber*,
   492 U.S. 33 (1989)..................................................................................................19

*Guevoura Fund Ltd. v. Sillerman*,
   2018 WL 6713124 ...................................................................................................27

*In re Ionosphere Clubs, Inc.*,
   922 F.2d 984 (2d Cir. 1990)....................................................................................10

*In re Iridium Operating LLC*,
   285 B.R. 822 (S.D.N.Y. 2002).............................................................................6, 22

*In re Joe's Friendly Serv. & Son Inc.*,
   2019 U.S. Dist. LEXIS 204355 (E.D.N.Y. Nov. 25, 2019)....................................28

*In re Johns-Manville Corp.*,
  63 B.R. 600 (S.D.N.Y. 1986) .........................................................................................11, 18

*Katchen v. Landy*,
  382 U.S. 323 (1966) ...........................................................................................................9, 24

*In re Lake Minnewaska Mountain Houses, Inc.*,
  42 B.R. 366 (S.D.N.Y. 1984) ...................................................................................................24

*Langenkamp v. Culp*,
  498 U.S. 42, 45 (1990) .............................................................................................................19

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*,
  2018 WL 4830091 (S.D.N.Y. Oct. 4, 2018) ............................................................................17

*In re Level Propane Gases, Inc.*,
  2006 WL 3499916 (N.D. Ohio Dec. 5, 2006) .........................................................................27

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d. Cir. 2012) .....................................................................................................26

*In re Manville Forest Products Corp.*,
  896 F.2d 1384 (2d Cir. 1990) ...........................................................................................7, 8, 19

*In re Merriweather Importers, Inc.*,
  179 B.R. 61 (D. Md. 1995) ......................................................................................................15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ...........................................................................................................12, 13

*In re Moore*,
  739 F.3d 724 (5th Cir. 2014) .....................................................................................................7

*In re Motors Liquidation Co.*,
  538 B.R. 656 (S.D.N.Y. 2015) ................................................................................................11

*In re New York Trap Rock Corp.*,
  158 B.R. 574 (S.D.N.Y. 1993) ...........................................................................................27, 28

*In re Nortel Networks, Inc.*,
  539 B.R. 704 (D. Del. 2015) ...................................................................................................15

*In re Ogden New York Servs., Inc.*,
  312 B.R. 729 (S.D.N.Y. 2004) ................................................................................................20

*In re Patient Educ. Media, Inc.*,
  210 B.R. 237 (Bankr. S.D.N.Y. 1997) ....................................................................................15

*Picard for Liquidation of Bernard L. Madoff Inv. Sec. LLC v. Saren-Lawrence*,
    2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018) .......................................................................19

*Picard v. Flinn Invs., LLC*,
    463 B.R. 280 (S.D.N.Y. 2011) ...............................................................................13, 27

*In re Pruitt*,
    910 F.2d 1160 (3d Cir. 1990) ......................................................................................27

*In re Recoton Corp.*,
    204 U.S. Dist. LEXIS 12452 (S.D.N.Y. July 1, 2004) .........................................11

*Roberts v. BroadwayHD LLC*,
    2021 WL 467292 (S.D.N.Y. Feb. 9, 2021) ...........................................................17

*In re S.G. Phillips Constructors, Inc.*,
    45 F.3d 702 (2d Cir. 1995) ...........................................................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2020 WL 5370576 (S.D.N.Y. Sept. 8, 2020) .......................................................10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    454 B.R. 307 (S.D.N.Y. 2011) ............................................................................2, 11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    486 B.R. 579 (S.D.N.Y. 2013) ................................................................................21

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...................................................................................................13

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018) .....................................................................................13

*SPV OSUS, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) .....................................................................................10

*Stern v. Marshall*,
    564 U.S. 462 (2011) ..........................................................................................2, 7, 10

*In re Tamalpais Bancorp*,
    451 B.R. 6 (N.D. Cal. 2011) .....................................................................................18

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010) .......................................................................................12

*In re Townhomes at Hill Top, LLC*,
    2008 WL 2078109 (D. Colo. May 14, 2008) .......................................................18

*Ucarer v. Ala Turk, Inc.*,
   2021 WL 620908 (E.D.N.Y. Feb. 17, 2021)......................................................13

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 & 36-37 (2d Cir. 2012) ..................................................................13

*In re VWE Group, Inc.*,
   359 B.R. 441 (S.D.N.Y. 2007)...........................................................................28

*In re Wood*,
   825 F.2d 90 (5th Cir. 1987) .................................................................................8

## Statutes

11 U.S.C. § 502(b) ....................................................................................1, 9, 10

11 U.S.C. § 503(b)(1)(A) ......................................................................................8

17 U.S.C. § 512(a) .................................................................................................3

17 U.S.C. § 1202 ...........................................................................................17, 18

28 U.S.C. § 157 .....................................................................................................6

28 U.S.C. § 157(b)(1)(B) .....................................................................................29

28 U.S.C. § 157(b)(2)(B) .......................................................................................7

28 U.S.C. § 157(d) ....................................................................................... *passim*

47 USC § 551(c)(2)(C) ........................................................................................14

## Rules

Fed. R. Bankr. P. 9014(c) ....................................................................................24

Fed. R. Civ. P. 26.................................................................................................24

## Other Authorities

*Memorandum of Law in Support of Movie Claimants' Motion to Withdraw
   Reference* [Bankr. Dkt. 1927] (the "Movie Companies Withdrawal Brief") ...........................6

*Movie Companies' Motion to Withdraw Reference* [Bankr. Dkt. No. 1927] ..................................1

*Notice to Holders of General Unsecured Claims Regarding Optional Procedure
   for Resolving Disputed Claims* (the "Disputed Claims Notice")................................3

*Reorganized Debtors' Omnibus Objection to Certain Disputed Copyright Claims*
¶¶ 22-29 ........................................................................................................................3

*Report Identifying Open Disputes with Respect to General Unsecured Claims*
[Bankr. Dkt. Nos. 1524, 1601, 1715, and 1768] ........................................................4

Some—but not all—of the Movie Companies that nearly a year ago filed claims in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") have done an eleventh-hour about-face and now move to withdraw their bankruptcy claims. *See Movie Companies' Motion to Withdraw Reference* [Bankr. Dkt. No. 1927] (the "Motion").[1] Frontier Communications Parent, Inc., and its subsidiaries, the post-effective date reorganized debtors (collectively, "Frontier") whose chapter 11 cases are pending in the Bankruptcy Court, respectfully oppose the Motion. In support of this opposition, Frontier respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Bankruptcy Court has the authority, jurisdiction, and capability to adjudicate the Movie Companies' claims, and the Motion should be denied for at least three reasons.

2.      ***First***, the Bankruptcy Court has the authority and duty to determine the merits of the Movie Companies' underlying claims. *See* 11 U.S.C. § 502(b) (if an objection to a proof of claim is made, the Bankruptcy Court "***shall determine*** the amount of such claim") (emphasis added). The Movie Companies repeatedly invoked and consented to that process. All of the Movie Companies voluntarily submitted to the Bankruptcy Court's authority and core jurisdiction when they filed their proofs of claims. Having "invoke[d] the aid of the bankruptcy court by offering a proof of claim and demanding its allowance," the Movie Companies "must abide the consequences

---

[1]    In an effort to bolster their own motion, the Record Companies misleadingly implied in their Reply Brief that *all* the Movie Companies have moved to withdraw the reference, stating: "*The* Movie Companies have now moved to withdraw the reference." (emphasis added). *See Reply Memorandum Of Law In Further Support Of The Copyright Claimants' Motion To Withdraw The Reference* [Dkt. No. 11] (the "Record Companies Withdrawal Brief") at p. 6. The fact of the matter is, even though represented by the same counsel as the movants here, not all of them have. Thus, some Movie Companies will have their claims adjudicated in Bankruptcy Court regardless of the outcome of this Motion.

of that procedure" and may not now reverse course.  *Stern v. Marshall*, 564 U.S. 462, 487, 496 (2011).  In addition, and on multiple occasions, the Movie Companies affirmatively agreed to have their claims adjudicated before the Bankruptcy Court and even proposed an adjudication schedule to the Bankruptcy Court.  Even now, since not all Movie Companies moved to withdraw the reference, the Bankruptcy Court will adjudicate at least some of the Movie Companies' claims no matter the disposition of the Motion.  *See* **Appendix A**

3.      ***Second***, the narrow criteria that would mandate withdrawal do not exist here because adjudication would not require "substantial and material" interpretation of applicable non-bankruptcy law but only straightforward application of well-settled law.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307, 312 (S.D.N.Y. 2011).

4.      ***Third***, permissive withdrawal is not warranted.  The Movie Companies do not overcome the strong presumption favoring Bankruptcy Court adjudication of these core matters initiated by the Movie Companies.  And the inefficiencies about which the Movie Companies complain result from the Movie Companies' tactical delays and attempts to forum shop and ride the Record Companies' coattails, not from some failing by Frontier or inability of the Bankruptcy Court to hear the subject claims.

## **FACTUAL BACKGROUND**

5.      On March 10, 2020, claimants represented by Culpepper LLLC (the "Movie Companies," listed in **Appendix A** attached hereto) sent a letter to Frontier asserting contributory and vicarious liability for alleged copyright infringement by certain Frontier subscribers.  *Declaration of Austin Klar in Support of Frontier Communications Parent, Inc.'s Opposition to Motion to Withdraw Reference of a Proceeding to the District Court Under 28 U.S.C. § 157(d)* (the "Klar Declaration") ¶ 4; *id.* Ex. 1.  The parties exchanged letters further discussing the Movie Companies' allegations in March and April 2020.  *See id.* ¶ 4; *id.* Ex. 2 and 3.

6.      On April 14, 2020, Frontier filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  *See* Bankr. Dkt. No. 1.  On August 21, 2020, Frontier filed its *Fifth Amended Joint Plan of Reorganization of Frontier Communications Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Bankr. Dkt. No. 984] (the "Plan").  On August 27, 2020, the Bankruptcy Court confirmed the Plan, *see* Bankr. Dkt. No. 1005, which left general unsecured claimants unimpaired, made clear such claimants "need not file Proofs of Claim," and allowed resolution of claims in the ordinary course or by the Bankruptcy Court (the "Disputed Claims Process"). Plan Art. VII.A.

**The Movie Companies' General Unsecured Claims**

7.      Between June 8, 2020, and September 28, 2020, the Movie Companies filed approximately fifty proofs of claim, alleging repeat infringing activity by certain Frontier subscribers, seeking approximately $11.9 million in damages (the "Movie Companies GUC Claims").  Frontier has a number of defenses, including protections provided in the Digital Millennium Copyright Act ("DMCA") Safe Harbor for Internet Service Providers, 17 U.S.C. § 512(a)  (the "Safe Harbor")  because Frontier maintains and has reasonably implemented a policy to appropriately address alleged infringement.  *See Reorganized Debtors' Omnibus Objection to Certain Disputed Copyright Claims* (the "Objection") ¶¶ 22-29.[2]

8.      On November 25, 2020, Frontier filed the *Notice to Holders of General Unsecured Claims Regarding Optional Procedure for Resolving Disputed Claims* (the "Disputed Claims Notice"), which further detailed the Disputed Claims Process.  *See* Bankr. Dkt. No. 1367.  On December 3, 2020, the Movie Companies wrote to Frontier regarding the Disputed Claims Notice.

---

[2]   The Movie Companies GUC Claims are substantially similar to claims filed by asserted by claimants represented by Oppenheim + Zebrak LLP (the "Record Companies" and these claims, the "Record Companies GUC Claims").  *See* Claim Nos. 3560 and 3561.

*See* Klar Decl. Ex. 4.  Frontier responded on December 4, 2020, proposing a stipulation to preserve the Movie Companies' right to pursue their claims *outside* of the Bankruptcy Court after emergence from chapter 11—that is, in a District Court proceeding.  *See* Klar Decl. Ex. 5. The Movie Companies did not agree.  *See id.*

### Mutual Agreement to Bankruptcy Court Adjudication

9.      In December 2020 and January 2021, Frontier and the Movie Companies conferred regarding potential discovery and a schedule to adjudicate their claims in the Bankruptcy Court. *See id.* Ex. 6.  Between January and April 2021, the Debtors filed monthly claims reports notifying parties that resolution may require Bankruptcy Court adjudication.[3]  Between December 2020 and May 2021, the Movie Companies neither objected to the Bankruptcy Court's jurisdiction nor suggested their claims should be adjudicated in a different forum.  *See* Klar Decl. ¶ 8.

10.      On May 14, 2021, the Movie Companies confirmed that that all claimants "can proceed with bankruptcy court adjudication" and offered to "discuss a discovery plan." *Id.* at ¶ 9; *id.* at Ex. 7.

11.      On May 17, 2021, Frontier filed the Objection to the Record Companies GUC Claims.  *See* Objection at ¶ 1.  Subsequent to filing the Objection, the Movie Companies again confirmed that each of them consented to have their claims determined by the Bankruptcy Court. *See* Klar Decl. Ex. 8 ( "[y]es we are on board" with bankruptcy adjudication).  On May 19, 2021, the Movie Companies signed the protective order in Frontier's chapter 11 cases, and Frontier provided voluntary discovery, including substantial amounts of raw data.  *See id.* at ¶ 12.  On May 25, 2021, after the Movie Companies confirmed that they wished to proceed in Bankruptcy

---

[3]      *See Notice of Claims Report Identifying Open Disputes with Respect to General Unsecured Claims* [Bankr. Dkt. Nos. 1524, 1601, 1715, and 1768].

Court, the Reorganized Debtors filed a revised form of order incorporating the Objection as to the Movie Companies Claims.  *See* Bankr. Dkt. 1842.

12.     On June 7, 2021, the Movie Companies filed the *Response to Notice of Reorganized Debtors' Omnibus Objection to Certain Disputed Copyrighted Claims*, Bankr. Dkt. 1894, in which they asked the Bankruptcy Court to enter an alternative adjudication schedule.

<strong>The Movie Companies' Administrative Claims</strong>

13.     Between May 28 and June 1, 2021, the Movie Companies filed administrative claims premised on the same theory of liability as the Movie Companies GUC Claims and the Record Companies GUC Claims but for alleged infringement occurring after July 2020.  *See* Claim Nos. 3803, 3804, 3806, 3807, 3808, 3812, and 3819.[4]

14.     On June 8, 2021, the Record Companies filed a complaint (the "Record Companies Complaint") commencing an action in this Court, premised on the same theories underlying the proofs of claim the Record Companies filed in the Bankruptcy Court.  *See* Record Companies Complaint ¶¶ 44-65, Civ. Case No. 1:21-cv-05050-AT.  They also filed the motion to withdraw reference with respect to their general unsecured and administrative claims.  *See* Record Companies Withdrawal Brief.

15.     On June 15, 2021, Frontier, the Record Companies, and the Movie Companies conducted a status conference before the Bankruptcy Court, at which the Bankruptcy Court asked counsel to the Movie Companies, "Are you looking to withdraw the reference to your clients' claims also to the claim objection?"  *In re Frontier Communications Corporation*, No. 20-22476

---

[4]     These claims are substantially similar to the Record Companies administrative claims (the "Record Companies Administrative Claims").  *See* Claim Nos. 3821, 3822, and 3823.

(RDD) (Bankr. S.D.N.Y. June 15, 2021) Hr'g Tr. 24:5-7.  Counsel to the Movie Companies
replied: "No." *Id.* Hr'g Tr. 24:8-9.

16.     Nonetheless, on June 28, 2021, certain of the Movie Companies changed their
mind, and filed the *Memorandum of Law in Support of Movie Claimants' Motion to Withdraw
Reference* [Bankr. Dkt. 1927] (the "Movie Companies Withdrawal Brief").   The Movie
Companies' claims only allege infringement before emergence. *See* Record Companies
Withdrawal Brief pp. 13-14.

## ARGUMENT

17.     Neither mandatory nor permissive withdrawal under 28 U.S.C. § 157 is
appropriate.  To the contrary, the Bankruptcy Court is the best forum to adjudicate the Movie
Companies' claims.  Further, the Movie Companies' request is an exercise in judicial inefficiency.
While it would be redundant for the litigation in this Court to proceed at the same time as
Bankruptcy Court adjudication, the Movie Companies (like the Record Companies) have it
backwards:  The parties should proceed entirely in the Bankruptcy Court where all the claimants
first initiated these proceedings and agreed to litigate their claims.  Indeed, proofs of claim filed
by the Movie Companies who have not moved to withdraw the reference, *see* **Appendix A**, will
be heard in Bankruptcy Court no matter the outcome of the Motion.  Accordingly, this Court should
deny the Motion.

**I.     THE OBJECTION TO THE MOVIE COMPANIES' CLAIMS FALLS SQUARELY
        WITHIN THE BANKRUPTCY COURT'S AUTHORITY AND JURISDICTION.**

   **A.     Adjudicating the Movie Companies' Claims is Core to the Chapter 11 Cases.**

18.     Matters are core to the bankruptcy process "by virtue of their nature if either (1) the
type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the
proceedings directly affect a core bankruptcy function."  *In re Iridium Operating LLC*, 285 B.R.

822, 830 (S.D.N.Y. 2002).   Claims allowance and estimation are core proceedings. 28 U.S.C. § 157(b)(2)(B); *see also In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995) ("[T]he determinative factor as to the bankruptcy court's jurisdiction in this case is that the [claimant] filed a proof of claim resulting in an adversary proceeding that involved the 'allowance or disallowance of claims against the estate[.]'") (citing 28 U.S.C. § 157(b)(2)(B)). This is true even if non-bankruptcy law is involved. *See, e.g.*, *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1389 (2d Cir. 1990) ("[T]he mere fact that [a creditor's] claim raises issues of state law does not preclude a holding that the adversary proceeding is core[.]").

19.     The Bankruptcy Court's authority over core proceedings includes the power to enter final judgment on any matter resolved in the process of ruling on a proof of claim. *See Stern*, 564 U.S. at 503.  *See also In re Moore*, 739 F.3d 724, 728 (5th Cir. 2014) (finding the bankruptcy court had constitutional authority to enter final judgment on the proof of claim and the underlying merits because the creditor "filed a proof of claim . . . and resolving the state-law claims is necessary to adjudicating its proof of claim").

20.     Consistent with these principles, at the June 15, 2021, conference, the Bankruptcy Court commented that the Objection "is a core matter, I think."  *In re Frontier Communications Corporation*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 15, 2021) Hr'g Tr. 21:7 [Bankr. Dkt. 1929].  The Movie Companies did not contend otherwise and indicated that they do not contest the Bankruptcy Court's power to adjudicate their claims.  *See id.* at 24:8-13.

21.     The Movie Companies therefore face a high bar to withdraw the reference:  they "must . . . overcome the presumption that bankruptcy courts, and not district courts, should determine core matters."  *See Abondolo v. GGR Holbrook Medford, Inc.*, 285 B.R. 101, 113 (E.D.N.Y. 2002) (citing *Burger Boys,* 94 F.3d at 762, and *Orion*, 4 F.3d at 1101).

    **B.**     **The Movie Companies Submitted to the Bankruptcy Court's Core Jurisdiction by Filing their Claims and Proposing an Adjudication Schedule.**

    22.     The Movie Companies willingly invoked the Bankruptcy Court's core jurisdiction by filing the Movie Companies GUC Claims, initiating a claims-allowance process. *See Manville*, 896 F.2d at 1389-90 ("The filing of [a proof of claim] invokes the special rules of bankruptcy concerning objections to the claim . . . . Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.") (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (emphasis omitted); *In re Adelphia Commc'ns Corp.*, 307 B.R. 404, 418 (Bankr. S.D.N.Y. 2004) ("[W]hen [copyright claimants] filed proofs of claim in the bankruptcy court, they submitted to the equitable jurisdiction of [the bankruptcy court], especially with respect to the very subject matter of their claims."). The Movie Companies then invoked the Bankruptcy Court's jurisdiction again by filing the Movie Companies' administrative claims.

    23.     The Plan did not require them to file those claims. Indeed, with respect to the Movie Companies GUC Claims, the Plan was clear that the Movie Companies "***need not file proofs of claim***." Plan Art. VII.A. (emphasis added). Nor did they need to file administrative claims because, while subject to a bar date, *see* Plan Art.II.A, those claims would have received the same, unimpaired treatment as general unsecured claims had they not been filed.[5] Frontier included a bar date in its Plan so that Frontier and parties in interest could ascertain the potential scope of post-petition liabilities.[6] That the Plan calls for payment of valid postpetition liabilities to general

---

[5]     Nothing in this opposition should be construed to alter or modify the express terms of the Plan or Confirmation Order or otherwise waive or modify Frontier's rights or defenses thereunder.

[6]     Of course, that liabilities were incurred post-petition does not render them administrative claims, which must be determined by the Bankruptcy Court to be "actual and necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Neither the Movie Companies nor the Record Companies explain how their claims could so qualify (nor can they).

unsecured creditors who did not timely file administrative claims aligns with the tenor of Frontier's reorganization, which sought to continue operations in the ordinary course of business to the extent possible.[7]   In any event, the assertion that the presence of a bar date renders submission to the Bankruptcy Court involuntary is likewise unavailing.  *See In re China Fishery Grp. Ltd. (Cayman)*, 2017 Bankr. LEXIS 2017, at *18-19 (Bankr. S.D.N.Y. July 19, 2017) (rejecting claimants' argument that a bar date order rendered "the submission of [its claims] effectively involuntary" because "in filing the[ir] [claims, the claimant] submitted itself to the jurisdiction of this court").

24.     The Movie Companies expressly submitted to the Bankruptcy Court's exclusive jurisdiction by filing such claims, which was expressly reserved in the Plan.  *See* Plan Art. XI (providing exclusive jurisdiction over allowance, disallowance, and priority of Claims, including payment of administrative claims).   This remains the case notwithstanding that the Movie Companies attempted reservation of rights in their proofs of claim.  *See* Movie Companies Withdrawal Brief at p. 8.   Filing a proof of claim invokes the equitable jurisdiction of the Bankruptcy Court and cannot be undone simply by reserving one's rights; to rule otherwise would violate decades of Supreme Court precedent and the plain language of the Bankruptcy Code.  *See Katchen v. Landy*, 382 U.S. 323, 336 (1966); 11 U.S.C. § 502(b).   Regardless, the Movie Companies subsequently, repeatedly, and voluntarily consented to Bankruptcy Court adjudication and proposed a Bankruptcy Court adjudication schedule.  *See* Klar Decl. Ex. 7 and 8; *See* Movie Companies Withdrawal Brief at p. 8.

25.     The Movie Companies cannot avoid the consequences of their actions by joining a manufactured competing proceeding and exacerbating the very judicial inefficiencies of which

---

[7]     This interpretation actually favors the Movie Companies and the Record Companies to the extent they can establish the merits of their claims.

they complain.  *See Stern*, 564 U.S. at 496 ("[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance **must abide the consequences of that procedure**.") (emphasis added).  As Congress mandated, the Bankruptcy Court should determine whether to allow or disallow their claims.  *See* 11 U.S.C. § 502(b) ("[I]f such objection to a claim is made, the court, after notice and a hearing, ***shall*** determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount[.]") (emphasis added).  *See also SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.") (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

## II.  THE MOVIE COMPANIES CANNOT MEET THE HIGH BAR REQUIRED FOR MANDATORY WITHDRAWAL.

26.   Mandatory withdrawal is construed narrowly. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) ("Withdrawal under 28 U.S.C. § 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but instead is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding.") (internal quotation omitted).  The Movie Companies do not satisfy the narrow criteria here.

### A.   The Movie Companies Must Show that Adjudication of their Claims Requires "Substantial and Material" Consideration of Non-Bankruptcy Law.

27.   The Movie Companies bear the burden of showing that withdrawing the reference is mandatory.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2020 WL 5370576, at *5 (S.D.N.Y. Sept. 8, 2020) (denying mandatory withdrawal "because Defendants have not offered any explanation as to why the determination they seek will require significant interpretation of non-bankruptcy federal laws rather than a routine application of the Constitution

and federal statutes") (quotations omitted).  Withdrawal is mandatory where it requires "substantial and material" interpretation of non-bankruptcy law.  *See Madoff*, 454 B.R. at 312.  "Consideration is 'substantial and material' when the case requires the bankruptcy judge to make a 'significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'"  *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991).  Mandatory withdrawal is therefore appropriate only "[where] resolving the action would require the bankruptcy court to engage itself in the intricacies of non-bankruptcy law, as opposed to a routine application of a non-Bankruptcy Code federal statute."  *In re Ames Dep't Stores, Inc.*, 512 B.R. 736, 741 (S.D.N.Y. 2014) (internal quotations omitted).  However, as this Court has observed, it would be inappropriate to withdraw disputes that require only *application* of federal law:  "[i]t would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to [grant withdrawal of] each case involving the straightforward application of a federal statute to a particular set of facts."  *In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y. 1986).  *Even where matters of first impression are involved*, which is not the case here, withdrawal is not mandatory; rather, "the burden of establishing a right to mandatory withdrawal is more easily met."  *Madoff*, 454 B.R. at 312 (quotation marks omitted).

28.     This Court has denied similar motions that, like this one, are premised on the mistaken assertion that the Bankruptcy Court is incapable of applying non-bankruptcy federal law. *See Gisinger v. Patriach*, 2016 WL 6083981, at *4 (S.D.N.Y. Oct. 18, 2016) (denying motion to withdraw reference in case involving the WARN Act where "a review of cases in this district suggests that bankruptcy courts routinely assess WARN Act liability"); *In re Motors Liquidation Co.*, 538 B.R. 656, 665 (S.D.N.Y. 2015) (RICO Act); *In re Recoton Corp.*, 204 U.S. Dist. LEXIS 12452, at *16 (S.D.N.Y. July 1, 2004) (Private Securities Litigation Reform Act and the Securities

Litigation Uniform Standards Act); *In re Adler, Coleman Clearing Corp.*, 270 B.R. 562, 566 (S.D.N.Y. 2001) (RICO and the Securities Exchange Act).

29.     The Movie Companies do not contend, nor could they, that their copyright claims are somehow more complex than RICO, SEC, or WARN Act cases.  Unsurprisingly, then, courts have denied motions to withdraw the reference on copyright claims.  S*ee In re Amfesco Industries, Inc.*, 1988 U.S. Dist. LEXIS 13227, at *5-6 (Bankr. E.D.N.Y. Nov. 14, 1988) (denying motion to withdraw reference of copyright claims because "there is a large body of law which may be read and analyzed as readily by a bankruptcy judge as by a district court judge").

**B.     Adjudicating the Movie Companies' Claims Does not Require Substantial and Material Consideration of Non-Bankruptcy Law.**

30.     The Movie Companies assert contributory and vicarious copyright infringement claims that do not arise out of any federal statute that would trigger § 157(d).  Rather, the Movie Companies assert that Frontier bears "secondary" liability, *see* Withdrawal Brief at p. 9, for the behavior of Frontier subscribers who allegedly used BitTorrent and other peer-to-peer networks to upload and download movies illegally.  *Id.* at 5-6, 9.

31.     Tribunals from the Supreme Court to the District Court have acknowledged that secondary infringement liability arises from common law.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("Although the Copyright Act does not expressly render anyone liable for infringement committed by another, these doctrines of secondary liability emerged from common law principles and are well established[.]") (internal quotations, citations, and alteration omitted); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) ("Contributory trademark infringement is a judicially created doctrine that derives from the common law of torts."); *see also In re Connie's Trading Corp.*, 2014 WL 1813751, at *6 (S.D.N.Y. May 8, 2014) (denying motion to withdraw reference when the legal issue to be interpreted was

the equitable doctrine of *in pari delicto* and not a significant interpretation of non-bankruptcy federal law). Thus, contrary to the Movie Companies' contentions, their claims are premised primarily on common law, not federal statutory law.

32. Moreover, secondary liability law is well-settled, based on decades-old Supreme Court precedent, and not a matter of first impression. *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. at 930 ("One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it[.]") (internal citations omitted); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (discussing standard for contributory and vicarious infringement); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 28 n.5 & 36-37 (2d Cir. 2012) (same).

33. The Movie Companies do not cite any case supporting that secondary copyright infringement is so complex to warrant mandatory withdrawal. And in the one case they do cite for mandatory withdrawal, *Picard v. Flinn Invs., LLC*, 463 B.R. 280 (S.D.N.Y. 2011), the court was clear that "even assuming arguendo that [the issue] implicates non-bankruptcy aspects of [a federal statute], only simple application of [such statute] is required to resolve the issue . . ., and thus that [] issue does not warrant withdrawal." *Id.* at 284. Similarly here, the Movie Companies' claims require straightforward application of copyright law, so withdrawal is not mandatory.

34. Similarly off-base is the Movie Companies' unsupported assertion that withdrawal is mandatory because of "the significant interpretation of non-bankruptcy issues that is necessary to adjudicate the Copyright Claims, including issues of first impression within the Second Circuit[.]" Withdrawal Brief at p. 10. They do not identify any issue of first impression, and this conclusory statement is not enough to satisfy the Movie Companies' burden. *See Ucarer v. Ala*

*Turk, Inc.*, 2021 WL 620908, at *2 (E.D.N.Y. Feb. 17, 2021) ("Merely stating that a statute is 'very complicated' is not a legally sufficient basis for mandatory withdrawal."). Nor is this contention true—issues of secondary copyright liability, as shown above, and DMCA issues raised here are not matters of first impression in this Circuit. *See, e.g.*, *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 55 (2d Cir. 2019); *Capitol Recs., LLC Vimeo, LLC*, 826 F.3d 78, 87 (2d Cir. 2016). This is so regardless of whether more than one federal statute is involved and that there are potentially numerous Frontier subscribers who allegedly infringed copyrighted works, requiring extensive discovery. Movie Companies Withdrawal Brief at pp. 9-10. Those factors are irrelevant to the standard that the Movie Companies must satisfy, namely, whether their claims require a "judge to make a significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *Exxon Corp.*, 932 F.2d at 1026 (internal quotations omitted).

35.     The Bankruptcy Court is more than capable of managing discovery, even discovery implicating 47 USC § 551(c)(2)(C), based on well-settled precedent. The Movie Companies point to nothing demonstrating that discovery will raise novel issues as opposed to the established body of law governing discovery in Article III courts. *See In re Dana Corp.*, 2007 WL 2908221, at *2 (Bankr. S.D.N.Y. Oct. 3, 2007) (mandatory withdrawal likely not warranted where "[t]he objection to the Government's claims is a core proceeding that requires only a straightforward application of established [federal] law to what are largely factual issues."); *In re Enron Power Mktg., Inc.*, 2003 WL 68036, at *3 (S.D.N.Y. Jan. 8, 2003) (mandatory withdrawal not warranted where "regardless of whether a proceeding is deemed core or non-core . . . a judge sitting in bankruptcy may still conduct pre-trial matters . . . if the case will necessitate protracted discovery"). Again, the Bankruptcy Court will have to do all of this anyway for the Movie Companies who have not moved to withdraw the reference for their claims. *See* **Appendix A**

36.     Courts in this Circuit have held that allegations of copyright infringement often involve a "straightforward application of . . . a well-developed body of federal law," *see In re Global Aviation Holdings Inc.*, 496 B.R. 284, 287 (E.D.N.Y. 2013), and are appropriately adjudicated in the bankruptcy court, rendering withdrawal of reference inappropriate. *See In re Amfesco Indus., Inc.*, 1988 U.S. Dist. LEXIS 13227, at *5 ("The copyright laws at issue here are not new; there is a large body of interpretive law which may be read and analyzed as readily by a bankruptcy judge as by a district court judge."); *In re Nortel Networks, Inc.*, 539 B.R. 704, 708-09 (D. Del. 2015) (denying withdrawal of disputed issues related to copyright law); *In re Merriweather Importers, Inc.*, 179 B.R. 61, 63 (D. Md. 1995) (mandatory withdrawal denied where adjudication required "no consideration of bankruptcy law, and such consideration of copyright law . . . is neither complex nor of first impression").  As another court in this Circuit commented when faced with a similar motion:

> The laws at issue are not new, and both the statutory language and the extensive jurisprudence that has developed around it offer a roadmap that a bankruptcy judge and district court judge can follow with equal ease. . . .  To find that the straightforward application of such a well-developed body of federal law demands removal of the reference would, in essence, provide the very 'escape hatch . . . to the district court' that Congress expressly intended to avoid in crafting the mandatory withdrawal provision.

*Global Aviation*, 496 B.R. at 287 (citations omitted).  Indeed, the Bankruptcy Court has adjudicated copyright issues in the past.  *See, e.g.*, *In re Ditech Holding Corp.*, 2020 WL 3967897, at *8 (Bankr. S.D.N.Y. July 11, 2020) (analyzing issues related to copyright law); *Adelphia*, 307 B.R. at 407-08 (analyzing and applying the Copyright Act); *In re Patient Educ. Media, Inc.*, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997) (same).  And it will have to do so here for the non-moving Movie Companies.  *See* **Appendix A**

37.     Moreover, should the Motion be denied, the Bankruptcy Court has inherent discretion to manage this dispute in the interests of justice and judicial economy.  If the Bankruptcy

Court sees fit, or if the parties agree, the Bankruptcy Court could decide first to adjudicate whether subscribers directly infringed copyrights, or whether any such alleged infringement was *de minimis*, which could obviate the need for further adjudication of the merits since it is well-settled that secondary infringement cannot exist without proof of direct infringement.

38.     Courts in this Circuit have adopted similar adjudication schedules with respect to claims that present similar threshold issues.  In *Enron*, this Court found that bankruptcy court adjudication was appropriate given the existence of a threshold issue, the disposition of which could obviate the need to consider more nuanced areas of federal law:

> [i]t is highly possible that the [b]ankruptcy [c]ourt will decide Enron's claims against Goldman without ever reaching the securities law issue, and may grant Goldman summary judgment on its other defender, such as the settlement payment safe harbor . . . To the extent that those issues can be decided without having to reach the [non-bankruptcy federal law] issue—which may be rendered moot by the decision—the bankruptcy court should do so.

*In re Enron Corp.*, 388 B.R. 131, 142 (S.D.N.Y. 2008) (citations and quotations omitted); *see also Ageloff*, 270 B.R. at 565 (denying withdrawal where pretrial motions "may substantially narrow or even decisively dispose of triable issues").

39.     The Movie Companies make no explanation as to why Bankruptcy Judge Robert D. Drain—who, over a distinguished 19-year career, has presided over some of the most complex restructurings, including, but not limited to, 21st Century Oncology Holdings, Inc., Allegiance Telecom Inc., Cenveo, Inc., Fortunoff Holdings, LLC, Purdue Pharma L.P., and Windstream Holdings, Inc.—is incapable of applying well-settled federal copyright law.  Given his breadth of experience, including in telecommunications cases, Judge Drain is particularly well suited to adjudicate the Movie Companies' claims.  In fact, the Movie Companies themselves appeared to

be comfortable with Judge Drain's capabilities when they triggered and embraced the claims allowance process.[8]

40.     This is so regardless of whether, as the Movie Companies curiously contend, the Bankruptcy Court must resolve claims under 17 U.S.C. § 1202 "concerning the integrity of CMI in file titles of illicit digital copies" and decide what type of relief to award for alleged violations of Section 1202.  As an initial matter, there is no Section 1202 claim alleged against Frontier.  To state a claim under Section 1202, the Movie Companies would have to allege (i) the provision or distribution of copyright management information ("CMI"), which includes the title, name, and other information identifying the work; (ii) that the defendant knew that the CMI was false; and (iii) that the Defendant acted with the intent to cause or conceal copyright infringement. *Fischer v. Forrest*, 968 F.3d 216, 223 (2d Cir. 2020); *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, 2018 WL 4830091, at *2 (S.D.N.Y. Oct. 4, 2018).  Frontier is not alleged to have knowingly provided false CMI or knowingly removed or altered CMI with the intent to conceal it.  *See, e.g.*, *Laser Kitten*, 2018 WL 4830091, at *5 (dismissing Section 1202 claim where there was no allegation that the defendant itself conveyed any false CMI); *Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 632 (S.D.N.Y. 2016) ("Since there are no factual allegations supporting an inference that [the defendant's] CMI alteration or removal was done intentionally, [the defendant's] motion to dismiss the DMCA claim is granted").

41.     Instead, the Movie Companies allege Frontier's ***subscribers*** violated Section 1202. Those claims do not implicate Frontier and cannot form the basis of mandatory withdrawal of claims that seek direct liability against Frontier.  *See, e.g.*, *Roberts v. BroadwayHD LLC*, 2021 WL

---

[8]     Indeed, at least some of the Movie Companies still want Judge Drain to adjudicate their claims. *See* **Appendix A**

467292, at *10, 13 (S.D.N.Y. Feb. 9, 2021) (dismissing Section 1202 claim where the plaintiff did not differentiate among various defendants in his allegations).

42.    The straightforward application, in addition to a secondary infringement analysis, does not satisfy the Movie Companies' high burden for mandatory withdrawal.  *See In re Johns-Manville Corp.*, 63 B.R. at 602; *see also In re Tamalpais Bancorp*, 451 B.R. 6, 9 (N.D. Cal. 2011) ("The weight of authority places emphasis on what *issues* are to be addressed rather than what *statute*s are involved. . . . There is no authority for [the] assertion that the sheer number of non-bankruptcy federal laws at issue . . . satisfies the requirement that consideration of other federal law be substantial." (internal quotations omitted)).  The secondary liability issues here are straightforward and implicate decades-old, well-settled law, and therefore mandatory withdrawal should be denied no matter *which statutes* or how many are involved.  *See In re Tamalpais Bancorp*, 451 B.R. at 9.

43.    The Court should also reject the Movie Companies' argument that withdrawal is mandatory because their claims implicate remedies under the Copyright Act.  Awarding remedies under a federal statute is not grounds to withdraw the bankruptcy court's reference.  *See In re Townhomes at Hill Top, LLC*, 2008 WL 2078109, at *2-3 (D. Colo. May 14, 2008) (denying § 157(d) withdrawal notwithstanding involvement of "remedies . . . only provided for under the Copyright Act," observing that "determining whether the Copyright Act has preempted the Plaintiff's claims . . . does not require significant interpretation of the Copyright Act, and that therefore mandatory withdrawal is not warranted").

### C.    A Now-Claimed Jury Trial Right Does Not Mandate Withdrawal.

44.    The Movie Companies are mistaken that the reference must be withdrawn to preserve a supposed right to a jury trial.  *See* Movie Companies Withdrawal Brief at pp. 10-12.

The jury right extends only to suits at law, not suits in equity.  *See Granfinanciera v. Nordber*, 492 U.S. 33, 41-42 (1989) ("Although the thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791, the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, *as opposed to those customarily heard by courts of equity or admiralty*.") (internal quotations omitted) (emphasis added).

45.     As discussed above, *see Manville*, 896 F.2d at 1389-90, in filing proofs of claim, the Movie Companies (like the Record Companies) submitted themselves to the "equitable jurisdiction" of the Bankruptcy Court.  *Adelphia Commc'ns Corp.*, 307 B.R. at 418.  As the Supreme Court made clear in an analogous circumstance in *Langenkamp v. Culp*, no jury trial right exists in connection to proofs of claim filed by creditors.  498 U.S. 42, 45 (1990) ("Respondents filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court.  Consequently, they were not entitled to a jury trial on the trustee's preference action.") (quotations and citation omitted).  *See also In re CBI Holding Co., Inc.*, 529 F.3d 432, 466 (2d Cir. 2008) ("[A] creditor loses its jury trial right only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim[.]"); *see also Picard for Liquidation of Bernard L. Madojf Inv. Sec. LLC v. Saren-Lawrence*, 2018 WL 4659476, at *3 (S.D.N.Y. Sept. 11, 2018) (finding that parties waived right to jury trial by triggering the claims allowance and disallowance process); *In re Copperfield Invs., LLC*, 2008 WL 4449413, at *8 (E.D.N.Y. Sept. 29, 2008) ("As both the proof of claim itself and the objections thereto raise the issue of fraudulent transfer of ownership . . ., a jury trial as to that issue is waived."); *In re Ogden New York Servs., Inc.*, 312 B.R. 729, 733 (S.D.N.Y. 2004) ("In general, a party forsakes its right to a jury trial by filing of a proof of claim with the bankruptcy court.").

46.     If the Movie Companies (or the Recording Companies, for that matter) wanted a jury trial, they should not have submitted themselves to the equitable jurisdiction of the Bankruptcy Court.  It was their choice to do so, with all of the consequences that follow.  They can hardly complain that someone is "taking away" a "right" that they voluntarily relinquished.  Indeed, if a jury trial were the paramount consideration, withdrawal would always be granted where a claimant could have originally filed a lawsuit and requested a jury.  Yet courts routinely deny such motions to withdraw, as reflected in the cases cited throughout this brief.

47.     Even if a jury trial were appropriate, demands for a jury are premature where a dispute is not trial ready.  *See Extended Stay*, 466 B.R. at 206 ("[W]ithdrawing the reference is premature where discovery has not commenced and plaintiffs have not yet survived a motion to dismiss."); *In re FKF 3, LLC*, 2016 U.S. Dist. LEXIS 117258, at *51 (S.D.N.Y. Aug. 30, 2016) ("such a right does not compel withdrawing the reference until the case is ready to proceed to trial."); *In re Adler, Coleman Clearing Corp.*, 270 B.R. 562, 565 (S.D.N.Y. 2001) (finding that jury demand did not warrant mandatory withdrawal where discovery was ongoing).  The Movie Companies' case could not be further from trial ready, as the Movie Companies have not filed a complaint on account of their claims, let alone engaged in motions practice or completed discovery they claim is necessary.  This counsels against withdrawal, even assuming a jury trial right existed.  *See In re Adler, Coleman Clearing Corp.*, 270 B.R. 562, 565 (S.D.N.Y. 2001) ("Judicial economy would be promoted by enabling the matter to proceed to trial in the district court, if at all, on a more focused record and by providing the district court the benefit of the analyses and insight of the bankruptcy court's consideration of any dispositive motions."); *see also Cipollone v. Va. True Corp.*, 2021 WL 2109205, at *3 (E.D.N.Y. May 25, 2021) ("The . . . potential entitlement to a jury trial in several months' time does not justify removing this case from the bankruptcy court today,

especially where . . . the bankruptcy court has already overseen a number of matters related to the
bankrupt estate and acquired what one court describes as a 'wealth of knowledge' about its
affairs.").  The Movie Companies' claims, as they themselves contend in their Motion, *see* Movie
Companies Withdrawal Brief at p. 10, involve discovery and resolution of legal issues relating to
liability, both of which can be done first without a jury.

48.     Mandatory withdrawal is therefore unwarranted, and granting such withdrawal
would merely allow the Movie Companies to run from the very process they initiated and
embraced in the Bankruptcy Court.  This Court ought not reward the Movie Companies' attempt
to test the waters in one court only to seek an alternative forum when things did not go as planned.

## III.    THE MOVIE COMPANIES CANNOT OVERCOME THE STRONG PRESUMPTION AGAINST PERMISSIVE WITHDRAWAL.

49.     Although this Court has discretion to withdraw the reference for cause, *Sec. Inv.
Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 486 B.R. 579, 582 (S.D.N.Y. 2013), no good
cause exists here.  Courts consider several factors:  "whether the claim or proceeding is core or
non-core, whether it is legal or equitable, considerations of efficiency, prevention of forum
shopping, and uniformity in the administration of bankruptcy law."  *Orion*, 4 F.3d at 1101.  "The
initial inquiry . . . is whether the claim is core or non-core.  After that, the court should weigh the
remaining factors."  *Extended Stay*, 466 B.R. at 196-97 (internal citations and quotations omitted).
Here, the Movie Companies' claims are core to the chapter 11 cases, and the balance of the other
*Orion* factors weighs against permissive withdrawal.

### A.    Adjudicating the Movie Companies' Claims is Core to the Chapter 11 Cases.

50.     "A district court considering whether to withdraw the reference should first
evaluate whether the claim is core or non-core, *since it is upon this issue that questions of efficiency
and uniformity will turn*. . . . [H]earing core matters in a district court could be an inefficient

allocation of judicial resources." *Orion*, 4 F.3d at 1101.  As discussed above, *see supra* § I.A, the Movie Companies' claims are core because they are "the type of proceeding [that] is unique to or uniquely affected by the bankruptcy proceedings." *Iridium*, 285 B.R. at 830 (S.D.N.Y. 2002). Accordingly, the Movie Companies face a high bar to "overcome the presumption that bankruptcy courts, and not district courts, should determine core matters." *See Abondolo*, 285 B.R. at 112.

> **B.     Considerations of Efficiency and Judicial Economy Militate in Favor of Adjudicating the Movie Companies' Claims in the Bankruptcy Court.**

51.     Judicial economy weighs heavily in favor allowing the Bankruptcy Court to continue to adjudicate the movants' claims along with the non-moving Movie Companies' claims that it will continue to hear regardless.  *See* **Appendix A**.  Not included among the parties seeking to withdraw the reference are, *inter alia*, the claimed authorized copyright holders to the allegedly infringed works raised in claim numbers 2119, 3806, and 3807 before the Bankruptcy Court, as indicated by the Movie Companies themselves in the Bankruptcy Court, who include:  (1) WWE Studios Finance Corp, (2) Outpost Productions, Inc.; and (3) Nikola Productions, Inc. *Compare* [Dkt. No. 1 and 1-1], *with* [Bankr. Dkt. 1894-1].  Thus, the Movie Companies suggestion that "[a]llowing separate actions in the Bankruptcy Court and the District Court to proceed will waste judicial resources and could result in inconsistent judgments" misses the mark.  Movie Companies Withdrawal Brief at p. 11.  What the Movie Companies propose is certain to result in separate, piecemeal, and inefficient proceedings.

52.     The only inefficiencies in this dispute are of the Movie Companies' (and Record Companies') own making.  The Plan did not require the Movie Companies to file their claims. *See* Plan Art.VII.A.  Nor did the Plan require the Movie Companies to consent multiple times to Bankruptcy Court adjudication and propose a Bankruptcy Court adjudication schedule.  The Movie Companies could have commenced litigation after the Effective Date when the automatic stay was

lifted, as Frontier suggested.  Instead, the Movie Companies insisted on resolving their claims pursuant to the Disputed Claims Process, consented to bankruptcy adjudication multiple times, and proposed an adjudication schedule to the Bankruptcy Court.  Moreover, as noted above, not all Movie Companies holding rights that are the subject of bankruptcy claims are party to the Motion, *see* **Appendix A**, so granting the motion would create, not avoid, multiple proceedings in different forums.  And since a subset of Movie Companies' claims are administrative claims, the Bankruptcy Court will need to determine whether such expenses are "actual and necessary" to preserve the estate.  Thus, withdrawing the reference would not promote judicial economy.

## 1.   The Bankruptcy Court is the Best Forum to Adjudicate the Movie Companies' Claims.

53.    The Movie Companies assert that the Bankruptcy Court is not suited to adjudicate their claims because, "as argued by the [Record Companies], a copyright infringement case will likely take between nine months to two years due to the necessity to conduct extensive fact and expert discovery."  Movie Companies Withdrawal Brief p. 11.  This assertion is meritless.

54.    *First*, the protracted timeline of litigation in an Article III Court cannot constitute sufficient grounds to permissively withdraw the reference; otherwise withdrawal would be warranted in virtually any matter before the Bankruptcy Court.  Indeed, procedural delays are endemic to district court litigation.   The Movie Companies offer such delay *in support* of their respective motions, but do not explain (nor can they) why opting for a longer, more expensive process somehow promotes judicial economy.  District Court delays significantly undermine their Motion.

55.    Indeed, as the Supreme Court has made clear, it is these very delays that the Bankruptcy Code is designed to avoid.  *See Katchen*, 382 U.S. at 328-29 ("[T]his Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual

administration and settlement of the estate of all bankrupts within a limited time period,' and that provision for summary disposition . . . is one of the means chosen by Congress to effectuate that purpose.") (citation omitted); *In re Lake Minnewaska Mountain Houses, Inc.*, 42 B.R. 366, 371 (S.D.N.Y. 1984) ("[T]he bankruptcy court has summary jurisdiction to adjudicate claims relating to a debtor's property where the debtor has actual or constructive possession of the property or has title to the property[.]").  Although summary in nature, proceedings before bankruptcy courts remain robust, and adequately preserve rights of litigants to try even the most complex cases.  *See, e.g.*, *In re Genon Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D.T.X. Apr. 25, 2018) (ordering an initial two-week briefing schedule at hearing) Hr'g Tr. 75:1-7 [Dkt. No. 1604] (unpublished); s*ee also In re Genon Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D.T.X. June 19, 2018) [Dkt. No. 1675] (unpublished) (order referencing initial briefing schedule set at prior hearing).

56.    ***Second***, the Movie Companies' desire for extensive discovery cannot constitute a basis for withdrawal.  *See* Movie Companies Withdrawal Brief at p. 11.  Discovery is not unique to these matters as compared to any other civil matter, and the Bankruptcy Code provides ample tools for the parties to obtain necessary discovery in connection with the Objection that would be available to them before this Court.  *See, e.g.,* Fed. R. Bankr. P. 9014(c) (adopting discovery rules under Federal Rules of Civil Procedure 26, 28-37).  In fact, Frontier already voluntarily provided certain discovery to the Movie Companies in the Bankruptcy Court.  The analysis does not change simply because Frontier proposed limits on discovery beyond what the Federal Rules of Civil Procedure contemplate.  The Bankruptcy Court has not adopted Frontier's proposal or otherwise set any limits on discovery.  Further, Frontier offered on multiple occasions to discuss alterations to Frontier's proposed schedule and voluntarily produced a substantial amount of raw data.  If the Movie Companies believe more formal discovery is necessary than

what Frontier initially suggested, they are free to propose alternate schedules to Frontier or the Bankruptcy Court.

### 2.    Bankruptcy Court Adjudication Would Not be Duplicative.

57.    By incorporating the Record Companies' arguments (to which Frontier respectfully incorporates its opposition in its entirety herein), the Movie Companies erroneously contend that there would be parallel, duplicative proceedings should the Motion be denied because the Record Companies' post-Effective Date claims would need to be adjudicated in the District Court.  This is another false dilemma.

58.    *First*, resolving the Motion in the Movie Companies' favor would not avoid Bankruptcy Court adjudication altogether, as not all Movie Companies who filed claims before the Bankruptcy Court are party to the Motion.  *See* **Appendix A**.  Thus, some Movie Companies will remain in Bankruptcy Court regardless of this Motion.

59.    *Second*, if this Motion and the Record Companies' motion are denied, Frontier will move to stay the Record Companies' litigation in this Court while claims are pending in the Bankruptcy Court.  The requirements for such a stay will not be difficult to meet.  When considering motions to stay concurrent litigation, courts in this Circuit consider:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 n.13 (2d. Cir. 2012).  Here, adjudicating the Movie Companies' claims in the Bankruptcy Court would substantially narrow the issues in dispute, if not resolve the matter entirely.  The burden on Frontier of adjudicating separate proceedings in two different forums, as well as the interests of the public and the judicial system in avoiding mutually incompatible results, would all favor granting the stay as well.  In

addition, although the Movie Companies appear to believe that litigation in the District Court would advance their interests, adjudication in the Bankruptcy Court would be more expeditious and weigh in favor of the stay under *Louis Vuitton.*

60.     While the balance of these factors weighs in Frontier's favor, the five-prong test in *Louis Vuitton* does not "replac[e] the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id.* at 99.  The "particular facts" here weigh decidedly in favor of a stay—that the Movie Companies (and the Record Companies) repeatedly invoked the jurisdiction of the Bankruptcy Court, agreed to Bankruptcy Court adjudication, engaged in scheduling discussions, and then challenged the Bankruptcy Court's jurisdiction in a strategic move to avoid the proceedings that they initiated.  The efficiency attending to proceedings before the Bankruptcy Court, should the District Court deny the Movie Companies' motion, would also counsel in favor of staying the litigation in this court.

### C.     The Timing of the Motion Indicates Forum Shopping.

61.     The Movie Companies submitted to the jurisdiction of the Bankruptcy Court by filing their claims and specifically agreeing to have the Bankruptcy Court adjudicate their claims. *See* Klar Decl. Ex. 7 and 8.  A subset of the Movie Companies did not move to withdraw their claims until after Frontier opposed the Record Companies' motion and before the Record Companies' reply, which afforded the Recorded Companies the opportunity to misleadingly suggest that *all* the Movie Companies sought to extricate themselves from Bankruptcy Court. *See* fn. 1 *supra*; *see also* **Appendix A**.  Approving the Movie Companies' Motion would therefore reward their forum shopping and the Recording Companies' continued gamesmanship. *See In re Level Propane Gases, Inc.*, 2006 WL 3499916, at *1 (N.D. Ohio Dec. 5, 2006) (stating that forum shopping "counsels strongly against withdrawing the reference"); *Picard*, 2018 WL 2383141, at

*6 ("[C]onsiderations of forum shopping weigh against withdrawal of the reference, because denying withdrawal will keep the action in the forum in which it was filed[.]").

### D.   Other Factors Weigh in Favor of Denying the Motion.

62.   Withdrawing the reference simply because litigation has been commenced in this Court by unaffiliated claimants post-Effective Date would set a precedent that would diminish the continuing jurisdiction of the Bankruptcy Court and subvert the central bankruptcy goal of providing a single forum to dispose of debtors' affairs.  *See In re New York Trap Rock Corp.*, 158 B.R. 574, 576 (S.D.N.Y. 1993).  It would also incentivize litigants to forum shop and waste court resources by filing—or attempting to join—multiple proceedings in different forums. *See In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) ("[A]llowing the [movants] a second opportunity to adduce the facts will encourage forum shopping, dissipate the parties' resources, and prolong the bankruptcy process[.]").

## IV.   THE MOVIE COMPANIES' MOTION IS UNTIMELY.

63.   The Motion should also be denied as untimely.  A "timely motion" in 28 U.S.C. § 157(d) means "as soon as possible after the moving party has notice of the grounds for withdrawing."  *Guevoura Fund Ltd. v. Sillerman*, 2018 WL 6713124, at *2 (S.D.N.Y. Dec. 3, 2018).  "Timeliness when not governed by a specific timetable is dependent on how parties interact; a short delay in some circumstances may be far more prejudicial than a longer one in others." *Trap Rock*, 158 B.R. at 577.  "Delay for tactical reasons, prejudicial to the adversary or to the administration of justice, can be grounds for denying [a motion to withdraw reference]." *Id. See also In re VWE Group, Inc.*, 359 B.R. 441, 446 (S.D.N.Y. 2007) (noting that even short delays are suspect where there are "very clear indications of tactical delays and forum shopping after the bankruptcy judge made intermittent findings adverse to the moving party").  Here, the Movie Companies had the same faulty grounds for withdrawal now as they did nearly a year ago.

64.     In *Trap Rock*, this Court denied a motion to withdraw the reference as untimely after a delay of three months and four days because the gap between commencing the dispute and filing the motion to withdraw was "rich with events," including "[f]orum shopping efforts." *Trap Rock*, 158 B.R. at 577; *see also In re Joe's Friendly Serv. & Son Inc.*, 2019 U.S. Dist. LEXIS 204355, at *17 (E.D.N.Y. Nov. 25, 2019) (ruling that motion to withdraw was untimely where motion was filed one month after an adverse ruling in the bankruptcy court); *Davis v. Mahlmann*, 1993 U.S. Dist. LEXIS 98, at *11 (N.D. Ill. Jan. 7, 1993) (ruling that motion to withdraw was untimely when filed one month after filing a nondischargeability complaint).  While there have been no adverse findings in the present matter, of primary concern is the lapse of time between when the moving party was on notice of the purported basis for withdrawal as well as whether the moving party's actions are suggestive of forum shopping.  In each of *Trap Rock*, *Joe's Friendly*, and *Mahlmann*, the court found that the movant's timeliness arguments were undermined by their apparent forum shopping and found cause to condense the time during which the movants would be permitted to file a motion to withdraw.  *See Trap Rock*, 158 B.R. at 577; *Joe's Friendly*, 2019 U.S. Dist. LEXIS 204355 at *17; *Mahlmann*, 1993 U.S. Dist. LEXIS 98 at *11.

65.     The Movie Companies were on notice of grounds to withdraw long before Frontier filed the Objection.  Nothing changed in the facts or the law between the initiation of Frontier's chapter 11 cases, confirmation of Frontier's Plan, and the filing of the Movie Companies' motion over nine months later.  Indeed, all of the considerations the Movie Companies flag (including an alleged jury trial right and which statutes and issues must be decided) existed with equal force in early 2020 when the Movie Companies first contacted Frontier before the commencement of Frontier's chapter 11 cases.  Thus, the Movie Companies should have been aware of purported cause for withdrawal as soon as Frontier filed their chapter 11 petitions.

66.     Any suggestion that the Movie Companies, or, for that matter, the Record Companies, could not have filed a motion to withdraw prior to Frontier's Objection misstates the law and is plainly incorrect.   The applicable statute, 28 U.S.C. § 157(d), provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."   Among the cases and proceedings referred to therein are "[c]ore proceedings," including "allowance or disallowance of claims against the estate."  28 U.S.C. § 157(b)(1)(B).  There was therefore nothing, apart from the desire to gain a competitive edge in potential subsequent litigation, to prevent the Movie Companies (or the Record Companies) from filing motions to withdraw reference concurrently with their proofs of claim if they believed the Bankruptcy Court was incapable of adjudicating the underlying merits.

## CONCLUSION

67.     Because neither mandatory nor permissive withdrawal is appropriate, the Court should not withdraw the reference and should return the matter to the Bankruptcy Court, which is well suited to resolve the Movie Companies' claims.

Dated:  July 12, 2021

/s/ *Rubén Castillo*
Rubén Castillo (admitted *pro hac vice*)
Massimo F. D'Angelo
Ildefonso Mas (admitted *pro hac vice* )
**AKERMAN LLP**
71 South Wacker Drive
47th Floor
Chicago, Illinois 60606
Telephone:    (312) 634-5700


David Weslow (admitted *pro hac vice*)
Ari Meltzer (admitted *pro hac vice*)
**WILEY REIN LLP**
1176 K Street NW
Washington, DC 20006
Telephone:    (202) 719-7000
Facsimile:    (202) 719-7049

*Co-Counsel to Frontier*

**Appendix A**

| Creditor | Claim No. | Filed Date | Party to Motion (Y/N) |
|---|---|---|---|
| Voltage Holdings, LLC | 2137 | 7/15/2020 | Y |
| Backmask, LLC | 2177 | 7/15/2020 | Y |
| Venice PI, LLC | 2128 | 7/15/2020 | Y |
| Bedeviled, LLC | 2132 | 7/15/2020 | Y |
| MON, LLC | 2131 | 7/15/2020 | Y |
| MON, LLC | 2150 | 7/15/2020 | Y |
| Colossal Movie Productions, LLC | 2167 | 7/15/2020 | Y |
| **WWE Studios Finance Corp** | **2119** | **7/15/2020** | **N** |
| TBV Productions, LLC | 2192 | 7/15/2020 | Y |
| Definition Delaware LLC | 2269 | 7/16/2020 | Y |
| I Am Wrath Productions, Inc. | 1378 | 6/8/2020 | Y |
| Hannibal Classics Inc. | 1372 | 6/8/2020 | Y |
| Justice Everywhere Productions LLC | 1394 | 6/8/2020 | Y |
| Badhouse Studios, LLC | 1434 | 6/8/2020 | Y |
| After Productions, LLC | 2168 | 7/15/2020 | Y |
| Rise Up, LLC | 2121 | 7/15/2020 | Y |
| Status Update LLC | 2129 | 7/15/2020 | Y |
| Morgan Creek Productions, Inc. | 2163 | 7/15/2020 | Y |
| Shock and Awe, LLC | 2125 | 7/15/2020 | Y |
| Fun Mom Dinner, LLC | 2264 | 7/16/2020 | Y |
| Dead Trigger Movie, LLC | 2228 | 7/16/2020 | Y |
| YAR Productions, Inc. | 2236 | 7/16/2020 | Y |
| Gunfighter Productions, LLC | 2237 | 7/16/2020 | Y |
| Ace in the Hole Productions, LP | 2233 | 7/16/2020 | Y |
| SF Film, LLC | 2193 | 7/16/2020 | Y |
| The Rest of Us, Inc. | 2235 | 7/16/2020 | Y |
| Killing Link Distribution, LLC | 2159 | 7/13/2020 | Y |
| Cell Film Holdings, LLC | 2283 | 7/21/2020 | Y |
| Dallas Buyers Club, LLC | 2511 | 8/17/2020 | Y |
| Screen Media Ventures, LLC | 2659 | 8/28/2020 | Y |
| Rambo V Productions, Inc. | 2742 | 8/31/2020 | Y |
| Millennium Funding, Inc. | 2741 | 8/31/2020 | Y |
| Millennium IP, Inc. | 2747 | 9/1/2020 | Y |
| Millennium Funding, Inc. | 2748 | 9/1/2020 | Y |
| LHF Productions, Inc. | 2750 | 9/1/2020 | Y |
| **Boyka: Undisputed IV[9]** | **2755** | **9/1/2020** | **N** |
| Millennium Media, Inc. | 2752 | 9/1/2020 | Y |

---

[9] Listed as an "authorized right holder" for this claim by Movie Claimants, [Bankr. Dkt. 1894-1], but this party not listed as a party to the present motion to withdraw reference.

| Creditor | Claim No. | Filed Date | Party to Motion (Y/N) |
|---|---|---|---|
| Bodyguard Productions, Inc. | 2754 | 9/1/2020 | Y |
| Hunter Killer Productions, Inc. | 2757 | 9/1/2020 | Y |
| **Angel Has Fallen[10]** | **2756** | **9/1/2020** | **N** |
| HB Productions, Inc. | 2759 | 9/1/2020 | Y |
| Laundry Productions, Inc. | 2777 | 9/8/2020 | Y |
| Black Butterfly Film, LLC | 2853 | 9/21/2020 | Y |
| AMBI Distribution Corp. | 2858 | 9/22/2020 | Y |
| Dubious Productions, Inc. | 2865 | 9/22/2020 | Y |
| Rupture CAL, Inc. | 2901 | 9/22/2020 | Y |
| Future World One, LLC | 2856 | 9/22/2020 | Y |
| Groove Tails Productions, LLC | 2862 | 9/22/2020 | Y |
| Family of the Year Productions, LLC | 3131 | 9/28/2020 | Y |
| **Outpost Productions, Inc.** | **3806** | **5/28/2021** | **N** |
| **Nikola Productions, Inc.** | **3807** | **5/28/2021** | **N** |
| Eve Nevada, LLC | 3803 | 5/31/2021 | Y |
| After II Movie, LLC | 3808 | 5/31/2021 | Y |
| Wonder One | 3804 | 5/31/2021 | Y |
| Wonder One | 3804 | 5/31/2021 | Y |
| Millennium Funding, Inc. | 3812 | 6/1/2021 | Y |
| American Cinema International, Inc. | 3819 | 6/1/2021 | Y |

---

[10] Listed as an "authorized right holder" for this claim by Movie Claimants, [Bankr. Dkt. 1894-1], but this party not listed as a party to the present motion to withdraw reference.